**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0158n.06**

Case No. 19-3429

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Mar 16, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JOSE ARISTONDO-LEMUS, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| WILLIAM P. BARR, Attorney General, | ) | |
| | ) | **OPINION** |
| Respondent. | ) | |
| | ) | |

BEFORE: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. The Board of Immigration Appeals (Board) denied Jose Adolfo Aristondo-Lemus (Jose) and Amanda Judith Sosa de Aristondo's (Amanda) motion to reopen their removal proceedings. They petition this court to review that decision. Because our precedent controls the question that Petitioners ask us to resolve, we DENY the petition for review.

**I.**

Both Petitioners are natives and citizens of Guatemala. Jose arrived in the United States in early 2001 as a non-immigrant visitor with authorization to remain in the United States for a temporary period not to exceed six months. Amanda arrived later that year also as a non-immigrant visitor with authorization to remain for a temporary period not to exceed six months. Both Jose and Amanda remained in the country without authorization beyond the end of their six-month

periods. So the Department of Homeland Security (DHS) served on each a "Notice to Appear" (NTA) dated February 2008. (A.R. 6-2 PageID 411, 515.)

The NTAs charged each with removability under 8 U.S.C. § 1227(a)(1)(B). They required each to appear "on a date to be set at a time to be set to show why [the Petitioner] should not be removed from the United States based on the charge(s) set forth." (*Id.* at 411, 515.) DHS later sent each a notice of hearing—dated March 2008 for Jose's and September 2008 for Amanda's—titled "NOTICE OF HEARING IN REMOVAL PROCEEDINGS[.]" (*Id.* at 408, 513.) Each notice of hearing specified the place and date for the hearing.

Petitioners applied for asylum. During their removal proceedings, however, the immigration judge (IJ) found that Petitioners failed to establish their eligibility for asylum. But instead of a removal order, the IJ granted Petitioners voluntary departure and instructed them to each post bond and depart the country before October 30, 2009. The Board also rejected Petitioners' appeal and remanded to the IJ. And in 2013 the Board rejected Petitioners' appeal from the IJ's decision on remand.

By late 2018, Petitioners had not departed the country. Instead, they moved to reopen the Board's earlier decision. They asked the Board to reopen Petitioners' removal proceedings and remand them to the IJ for further proceedings.

The Board denied Petitioners' motion. First, it found the motion untimely. Petitioners filed the motion about five years after the Board's decision, well beyond the ninety-day deadline. Second, it acknowledged that the ninety-day deadline does not apply to motions seeking asylum based on changed country conditions in the country of nationality, but concluded that because Petitioners failed to show "materially changed country conditions or circumstances in Guatemala" the evidence submitted likely would not change the result in Petitioners' cases. (*Id.* at 4.)

Third, the Board addressed Petitioners' challenge that the immigration court lacked jurisdiction over the earlier proceedings. "[A] a defective NTA is incapable of vesting the [immigration] court with jurisdiction[.]" (*Id.* at 17.) Petitioners contended that the NTAs sent to them were defective under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The documents labeled "Notice to Appear" that Petitioners received did not specify a time and date for Petitioners' appearance. (*Id.* at 15.) And those documents provided Petitioners a P.O. Box address for the hearing's location. They argued that a P.O. Box address "is not really a location" but "is a mail receptable" because it "is physically impossible" to "conduct[] [a court hearing] inside a P.O. Box." (*Id.* at 16.) The Board rejected that argument as well. Under the Board's precedent, the IJ did have jurisdiction over Petitioners' proceedings. (*Id.* at 4 (citing *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (B.I.A. 2018)).)

Last, the Board addressed Petitioners' argument that Amanda "is eligible for cancellation of removal based on *Pereira v. Sessions*[.]" (*Id.* at 17 (emphasis omitted).) Petitioners argued that the defective NTAs they received "d[id] not trigger the stop-time rule for determining eligibility for cancellation of removal." (*Id.* at 18.) And "[h]ad Amanda accrued 10 years of physical presence in the United States[,] . . . she would have been eligible to apply for cancellation of removal" because "her mother is a lawful permanent resident." (*Id.*) So Petitioners asked the Board to "reopen" both Petitioners' removal proceedings and remand them to the IJ "to determine eligibility for cancellation of removal . . . in light of . . . *Pereira v. Sessions*[.]" (*Id.* (emphasis omitted).)

The Board refused. Even if the stop-time rule did not apply, the Board found that Amanda still would not have been eligible for cancellation of removal. She last entered the country in 2001. So at the time of the IJ's first decision in 2009, she "had not accrued the necessary 10 years of

continuous physical presence." (*Id.* at 4.)  But it reasoned that a notice of hearing with the time-and-place information *would* trigger the stop-time rule and "perfect[]" the NTA.  (*Id.*)  Amanda received the notice of hearing with the time and place "before she had acquired the 10 years of continuous physical presence required for cancellation of removal." (*Id.*)  That perfected the NTA and triggered the stop-time rule.  Thus, in either scenario, Amanda "had not accrued the necessary 10 years of continuous physical presence" to qualify her for cancellation of removal.  (*Id.*)

As a result, the Board denied Petitioners' motion to reopen.  This petition for review followed.

## II.

Petitioners raise only one issue on appeal:  May a later-issued document that informs the non-citizen of the date, time, or location of the initial removal hearing combined with an earlier document without that information trigger the "stop time rule[?]"[1]  (Pet'r Br. at 8.)

"The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien" meets four criteria.  8 U.S.C. § 1229b(b)(1).  One of those criteria requires that "the alien" must "ha[ve] been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application[.]"  *Id.* § 1229b(b)(1)(A).  Under the stop-time rule, the ten years of continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)[.]"  *Id.* § 1229b(d)(1).  A notice to appear must include various categories of information

---

[1] On appeal, Petitioners do not assert that the immigration court had no jurisdiction over the proceedings. (Pet'r Br. at 6 n.2.) They also do not raise the issue of whether they established a material change in circumstances affecting their eligibility for asylum-related relief and protection. (*Id.*) And they only raise one argument in their opening brief on appeal. So we consider any other argument Petitioners raised before the Board—*e.g.*, the timeliness of their motion—abandoned. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

including "[t]he time and place at which the [removal] proceedings will be held." *Id.* § 1229(a)(1)(G)(i).

Petitioners urge us to answer the question they raise on appeal in the negative and to remand the matter to the Board for further proceedings. The documents "labeled as [] NTA[s]" that DHS issued here lacked the date, time, or location of the initial removal proceedings. (Pet'r Br. at 15–19.) But, they argue, "the time and place of the hearing must be designated in an NTA to trigger the stop time rule." (*Id.* at 16.) They also urge us to find that the notice of hearing did not cure the defect in the earlier document labeled NTA and served to each Petitioner because they assert that "a subsequently served notice of hearing specifying" that information does not satisfy § 1229(a) and the stop-time rule. (*Id.* at 17–18 (describing the notice of hearing as a "poor substitute" for an NTA).)

But our precedent controls; under any standard of review, we must answer the question affirmatively. "[W]ritten communications to a noncitizen in multiple components or installments may collectively provide all the information necessary" to meet 8 U.S.C. §§ 1229b(d) and 1229(a). *Garcia-Romo v. Barr*, 940 F.3d 192, 201 (6th Cir. 2019). So "the government triggers the stop-time rule when it sends a noncitizen all the required categories of information under § 1229(a)(1)(A)–(G) through one *or multiple* written communications." *Id.* (emphasis added).

Petitioners correctly note that DHS sent Jose and Amanda documents labeled "Notice to Appear" without the information required by statute. (A.R. 6-2 PageID 411, 515.) But DHS later sent them each a notice of hearing that contained the missing information. The documents sent to Petitioners "collectively provide[d] all the information necessary" to satisfy the statute. *Garcia-Romo*, 940 F.3d at 201. Accordingly, once Petitioners received that information, "the government

5

trigger[ed] the stop-time rule[.]" *Id.* And the government did so within ten years for each Petitioner.

## III.

Our precedent bars Petitioners' sole argument on appeal. For this reason, we DENY the petition for review.